UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| THE MOUNTAIN CLUB OWNER'S ASSOCIATION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GRAYBAR ELECTRIC COMPANY, INC., and DOES 1-50,<br><br>　　　　Defendants,<br><br>　　v.<br><br>GENERAL CABLE CORPORATION,<br><br>　　Third-Party Defendant. | CIV. NO. 2:13-1835 WBS KJN<br><br><u>MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT</u> |

----oo0oo----

　　　　Plaintiff The Mountain Club Owner's Association brought this action against defendant Graybar Electric Company, Inc. ("Graybar"), arising out of an electrical fire at plaintiff's property located in Kirkwood, California. Graybar and third-party defendant General Cable Corporation ("General Cable") now

1

move for summary judgment on plaintiff's manufacturing defect claim pursuant to Federal Rule of Civil Procedure 56.

## I. Factual & Procedural History

Plaintiff is a homeowners' association and the owner of property located at 1399 Kirkwood Meadows Drive in Kirkwood, California (the "property"). (Second Am. Compl. ("SAC") ¶ 1 (Docket No. 40).) Graybar allegedly supplied electric cable to a subcontractor who installed it during the construction of the property in 1999. (Id. ¶¶ 8-10.) Plaintiff claims that because of a manufacturing defect, the cable in the ceiling above unit 314, which fed a chandelier, had inadequate insulation. (Id. ¶¶ 12-20.) Plaintiff asserts that this lack of sufficient insulation caused a leakage of electric current, which produced heat and resulted in a high impedance electric fault that ignited the wood framing of the unit's ceiling. (O'Connor Decl. ¶¶ 6-12 (Docket No. 71-4).) The ensuing fire allegedly caused over $6 million dollars in damage to the property. (SAC ¶ 13.)

Plaintiff filed suit against Graybar alleging strict product liability based on a manufacturing defect in the electric cable. (Id. 15-20.) Graybar filed a third-party complaint against General Cable, the cable's manufacturer. (Docket No. 49.) Graybar and General Cable (collectively, the "moving parties") now move for summary judgment on plaintiff's manufacturing defect claim. (Docket No. 68.)

## II. Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

1  P. 56(a).  A material fact is one that could affect the outcome
2  of the suit, and a genuine issue is one that could permit a
3  reasonable trier of fact to enter a verdict in the non-moving
4  party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,
5  248 (1986).  In deciding a summary judgment motion, the court
6  must view the evidence in the light most favorable to the non-
7  moving party and draw all justifiable inferences in its favor.
8  <u>Id.</u> at 255.
9        The party moving for summary judgment bears the initial
10 burden of establishing the absence of a genuine issue of material
11 fact and can satisfy this burden by presenting evidence that
12 negates an essential element of the non-moving party's case.
13 <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).
14 Alternatively, the moving party can demonstrate that the non-
15 moving party cannot produce evidence to support an essential
16 element upon which it will bear the burden of proof at trial.
17 <u>Id.</u>
18       Once the moving party meets its initial burden, the
19 burden shifts to the non-moving party to "designate specific
20 facts showing that there is a genuine issue for trial." <u>Id.</u> at
21 324 (citation omitted).  To carry this burden, the non-moving
22 party must "do more than simply show that there is some
23 metaphysical doubt as to the material facts."  <u>Matsushita Elec.
24 Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  "The
25 mere existence of a scintilla of evidence . . . will be
26 insufficient; there must be evidence on which the jury could
27 reasonably find for the [non-moving party]."  <u>Anderson</u>, 477 U.S.
28 at 252.

1        In deciding a summary judgment motion, the court must
2   view the evidence in the light most favorable to the non-moving
3   party and draw all justifiable inferences in its favor. Id. at
4   255. "Credibility determinations, the weighing of the evidence,
5   and the drawing of legitimate inferences from the facts are jury
6   functions, not those of a judge" ruling on a motion for summary
7   judgment. Id.

8   III.  Discussion

9        Plaintiff's strict product liability claim is
10  predicated on the allegation that "[t]he subject cable was
11  defectively manufactured and unreasonably dangerous." (SAC
12  ¶ 18.) A manufacturing defect occurs when a product "differs
13  from the manufacturer's intended result or from other ostensibly
14  identical units of the same product line." Barker v. Lull Eng'g
15  Co., 20 Cal. 3d 413, 429 (1978). "For example, when a product
16  comes off the assembly line in a substandard condition it has
17  incurred a manufacturing defect." Id.

18       A plaintiff prevails on a manufacturing defect claim by
19  establishing that there was a defect in the manufacture or design
20  of the product and that such defect was a proximate cause of the
21  injury. Dimond v. Caterpillar Tractor Co., 65 Cal. App. 3d 173,
22  177 (1976). Plaintiff must show that the alleged defect existed
23  at the time of manufacture. Garrett v. Howmedica Osteonics
24  Corp., 214 Cal. App. 4th 173, 190 (2d Dist. 2013).

25       Evidence of a manufacturing defect can be either direct
26  or circumstantial, id. at 182, and the defect may be shown by
27  inference from circumstantial evidence, Vandermark v. Ford Motor
28  Co., 61 Cal. 2d 256, 260 (1964); Elmore v. Am. Motors Corp., 70

4

Cal. 2d 578, 584 (1969).  "Whether or not a product was defectively designed or manufactured is a factual issue to be determined by the trier of fact."  Brooks v. Eugene Burger Management Corp., 215 Cal. App. 3d 1611, 1626 (1989). Circumstantial evidence alone may create a genuine issue of material fact sufficient to defeat a motion for summary judgment. Cornwell v. Electra Central Credit Union, 439 F.3d 1018, 1029-1030 (9th Cir. 2006).

The parties and their experts cite to the National Fire Protection Association's NFPA 921: Guide for Fire & Explosion Investigations (2014 ed.) (the "NFPA"), which establishes "guidelines and recommendations for the safe and systematic investigation or analysis of fire and explosion incidents."  Id. § 1.2.1.  The electric cable above unit 314 contained three copper conductors that were insulated with a common plastic insulator.  Copper conductors allow the flow of electric currents in one or more directions, and insulators impede that flow. Damaged or insufficient insulation can cause leakage in the conductor's electric current, causing the current to flow through the insulator.  See generally id. chs. 9, 18-22.

The leakage current produces heat that burns and chars the insulation, and the insulation becomes carbonized.  Since carbon is also a conductor of electricity, this may cause an electric arc--a high-temperature electric discharge "in the range of several thousand degrees."  Id. §§ 9.9.4.1, 9.9.4.5.  Arcing through charred insulation is also known as "arcing through char."  Id. § 9.10.3 ("Insulation on conductors, when exposed to direct flame or radiant heat, may be charred before being melted.

5

1  That char is conductive enough to allow sporadic arcing through
2  the char.").

3       The moving parties argue that the fire on plaintiff's
4  property could not have been caused by electric arcing in the
5  cable because there was evidence of arcing through char.  They
6  contended that it was undisputed that arcing through char can
7  never cause a fire and instead occurs only as a result of an
8  external fire.  (See, e.g., Pl.'s Resp. to Defs.' Statement of
9  Undisp. Material Facts ¶¶ 61-63 (Docket No. 71-1); Ward Decl. in
10 Supp. of Mot. for Summ. J. Ex. 5 ("Eberhardt Decl.") ¶¶ 12-19
11 (Docket No. 68-2); Reply at 1-3 (Docket No. 73).)  In support,
12 the moving parties cite the NFPA and its companion guide, Fire
13 Investigator: Principles & Practice to NFPA 921 and 1033 (4th ed.
14 2016) (the "FIPP").  (See Ward Decl. in Supp. of Reply Ex. 12
15 ("FIPP") (Docket No. 73-1).)

16      However, it is not plaintiff's experts' theory that
17 arcing through char was the sole cause of the fire.  Plaintiff's
18 experts concluded that a leakage current and a high impedance
19 electrical fault, not "arcing through char," had caused the fire
20 on the property.  (E.g., O'Connor Decl. ¶¶ 6-12, Ex. E.)
21 Plaintiff's expert Michael O'Connor opined that a lack of
22 sufficient insulation in the electric cable, which was caused by
23 a manufacturing defect, created a leakage of electric current.
24 (See Butler Decl. Ex. B ("O'Connor Dep.") at 13:17-14:1, 20:13-
25 21:16 (Docket No. 71-2).)  That leakage current produced heat
26 that degraded and charred the insulation between the copper
27 conductors.  (Id.)  This resulted in arcing through char, which
28 then discharged more heat and caused further charring and

6

carbonization of the insulation.  (Id.)

O'Connor further found that the surface melting on the copper conductors showed evidence of arc faulting in the cable. (O'Connor Decl. Ex. E at 4.)  An arc fault, also known as a short circuit, is a flow of electric current that is not within a normal range.  Arc faults can be either high-current or low-current faults.  High-current arc faults can be detected by circuit breakers, which interrupt the power supply to stop further heating from the arc before a fire results.

Low-current arc faults, also known as high impedance faults, cannot be detected by conventional circuit breakers because their currents are too low to activate the breakers.  A low-current fault may therefore cause overheating without tripping a circuit breaker and ultimately ignite nearby combustible materials.  See NFPA §§ 9.2.8.3, 9.9.3.2.  The FIPP describes arcing through char as a low-current fault that "may be capable of igniting combustibles" if its current is insufficient to trip a protective device such as a circuit breaker.  (FIPP at 130.)

Because there was evidence of arc faulting in the electric cable here, the cable did not trip its circuit breaker, and there was no evidence of a high-current arc fault, O'Connor concluded that the fire was caused by a low-current arc fault, also known as a high impedance fault.  (O'Connor Decl. Ex. E at 4-5.)  He determined that on the day of the fire, the fault's duration and intensity had caused the nearby wood framing in the ceiling of unit 314 to become sufficiently heated so as to ignite it.  (O'Connor Dep. at 96:9-16.)

1          According to the NFPA, insulation can char--and
2   therefore cause arcing--from either an electric current, such as
3   leakage current or a high impedance fault, or from non-electrical
4   means, such as an external fire.  See NFPA § 9.9.4.5 ("The two
5   primary means by which carbonization is created is by flow of
6   electric current or by thermal means not involving
7   electricity."); id. § 9.9.4.5.1 (stating that leakage current may
8   cause charring, arcing, or the ignition of combustible materials
9   around the arc); id. § 9.11 ("Melted electrical conductors can be
10  examined to determine if the damage is evidence of electrical
11  arcing or melting by fire."); id. § 9.11-9.11.2 (discussing the
12  types of evidence that indicate melting from electric arcing
13  versus melting from an external fire).
14         The moving parties cite a table in the FIPP that states
15  that arcing through char is "always a result of fire."  (FIPP at
16  131.)  That table, however, provides only "general indicators to
17  help determine whether the damage to [a] conductor is from the
18  fire, arcing, or overload."  (Id.)  With respect to the table,
19  the text states that damage from arcing through char, "by itself,
20  does not necessarily indicate whether [arcing through char] was
21  or was not the cause of a fire."  (Id.)  The FIPP further
22  describes arcing through char as a low-current arc fault that
23  "may be capable of igniting combustibles" if the fault current
24  does not activate a circuit breaker.  (Id. at 130.)  Accordingly,
25  the moving parties' contention that arcing through char is always
26  the result of fire, and never the cause of it, does not appear to
27  be entirely true.
28         The moving parties also rely on Hinckley v. La Mesa

8

1  R.V. Center, Inc., 158 Cal. App. 3d 630 (1984), to argue that
2  proof of a manufacturing defect requires a showing that the fire
3  occurred shortly after the sale of the product.  This reliance is
4  misplaced.  Hinckley did not state that a plaintiff must
5  establish that an accident occurred shortly after sale as an
6  element of a manufacturing defect claim.  The Hinckley court
7  instead emphasized that "the addition of other facts tending to
8  show that the defect existed before the accident, such as its
9  occurrence within a short time after sale, or proof of the
10 malfunction of a part for which the manufacturer alone could be
11 responsible, may make out a sufficient case, and so may expert
12 testimony.  So likewise may . . . elimination of other likely
13 causes by satisfactory evidence."  Id. at 643 (citation and
14 emphases omitted).[1]

15         The Ninth Circuit has stated that "expert opinion may
16 defeat summary judgment if it appears the expert is competent to
17 give an opinion and the factual basis for the opinion is
18 disclosed."  Rebel Oil Co. v. Atlantic Richfield Co., 51 F.3d
19 1421, 1435 (9th Cir. 1995).  Here, O'Connor is a licensed
20 structural, civil, electrical, and mechanical engineer and is the
21 principal engineer and owner of a forensic engineering consulting
22 firm.  (O'Connor Decl. Ex. E at 6-10).  Plaintiff's second
23 expert, Donald Perkins, is a certified fire investigator with
24 over 40 years of professional experience in the field of fire

---

[1] The moving parties also argue that plaintiff has failed to raise a triable issue regarding a manufacturing defect because the cable at issue was manufactured and inspected pursuant to industry standards.  However, this is insufficient by itself to conclude that as a matter of law no manufacturing defect exists.

1  investigations.  (Perkins Decl. ¶ 1 (Docket No. 71-3).)
2           Plaintiff's experts based their opinions on their
3  examinations of the burn patterns on plaintiff's property, the
4  ceiling of unit 314, the electric cable recovered from the fire
5  scene, and the copper conductors that were exposed in the
6  electric cable.  (O'Connor Decl. ¶¶ 4-24, Ex. E; Perkins Decl.
7  ¶ 2, Ex. D at 5-6.)  They also ruled out other likely sources of
8  the fire in this case.  For example, they eliminated the roof
9  snow melt system because it was off at the time of the fire, the
10 chandelier because it hung too low beneath the ceiling, and the
11 "pancake" junction box above the chandelier because it was only
12 lightly damaged and there was no evidence of electric arcing
13 inside the box.  (O'Connor Decl. ¶¶ 9-21; Perkins Decl. Ex. D at
14 6-9.)
15          The ceiling area of unit 314 where the electric cable
16 was located was the only remaining possible cause of ignition
17 that had not been ruled out.  (O'Connor Decl. ¶ 6; Perkins Decl.
18 Ex. D at 8-9.)  Based on evidence of electrical faulting and
19 melting of the copper conductors inside the cable, plaintiff's
20 experts concluded that the fire originated from the electric
21 cable, and that the cable's electrical faulting was caused by
22 insufficient insulation resulting from defective manufacturing.
23 (E.g., O'Connor Decl. ¶ 6.)  Plaintiff's experts are thus
24 competent and they have sufficiently disclosed the factual bases
25 for their opinions.  See Rebel Oil, 51 F.3d at 1435.
26          The moving parties counter with their own expert
27 testimony that the electric arcing inside the cable could have
28 occurred as a result of the fire, as opposed to having caused the

fire.  (Eberhardt Decl. ¶¶ 15-16.)  Their experts also dispute plaintiff's evidence that the fire could not have originated in the pancake box above the chandelier.  (Id. ¶ 11 n.1; Ward Decl. Ex. 6 ("Hunter Decl.") ¶¶ 7-11.)  During oral argument, however, counsel for the moving parties acknowledged that they do not contend that the pancake box had caused the fire.  Rather, their position was that it would be impossible here to prove that a high impedance fault had caused the fire.

The court disagrees.  The moving parties' evidence has not established conclusively and as a matter of law that the fire was caused by something other than a high impedance fault in the cable.  The moving parties' contentions disputing the conclusions offered by plaintiff's experts instead create triable issues of material fact as to whether the fire was caused by a high impedance fault in the cable that resulted from insufficient insulation due to defective manufacturing.  See Cornwell, 439 F.3d at 1029-30 (9th Cir. 2006) (finding that circumstantial evidence alone may create a genuine issue of material fact sufficient to defeat a motion for summary judgment).

On "summary judgment the inferences to be drawn from the underlying facts" must "be viewed in the light most favorable to the party opposing the motion."  Matsushita, 475 U.S. at 587.  Here, the fire investigation report that was prepared immediately after the fire had concluded that "[t]he source of the fire is undetermined but could have been possibly caused by an electrical problem somewhere in the attic and dormer space above the living room of Unit 314."  (Ward Decl. Ex. 4 at 2.)  Further, arc faulting is known to be a possible cause of fire.  See FSRA §

11

9.10.2.1 ("If the conductors were insulated prior to the faulting and the fault is suspected as the cause of the fire, it will be necessary to determine how the insulation failed or was removed and how the conductors came in contact with each other.").

Construing the evidence in the light most favorable to plaintiff, the court concludes that plaintiff has provided "sufficiently 'specific' facts from which to draw reasonable inferences about other material facts that are necessary elements of [plaintiff's manufacturing defect] claim." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995) (citation omitted). Based on the record, including the reports and depositions of plaintiff's experts, the court thus finds that plaintiff has presented "concrete evidence from which a reasonable juror could return a verdict in [plaintiff's] favor." Anderson, 477 U.S. at 256.

Accordingly, the court must DENY the moving parties' motion for summary judgment on plaintiff's manufacturing defect claim.

IT IS THEREFORE ORDERED that Graybar Electric Company, Inc. and General Cable Corporation's motion for summary judgment on plaintiff's strict product liability manufacturing defect claim (Docket No. 68) be, and the same hereby is, DENIED.

Dated: January 27, 2016

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE